# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY T. MOORE, Jr., #446508, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17-cv-01386-JPG ) |
| KEEFE SUPPLY COMPANY, RICHARD WATSON, AUSTIN EVERETT, and ST. CLAIR COUNTY, ILLINOIS, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Anthony T. Moore, who is currently detained at St. Clair County Jail ("Jail"), filed this action to challenge the cost of items in the Jail's commissary. (Doc. 1, pp. 5-12). Plaintiff complains that inmates at the Jail are charged more for many items than federal inmates. (Doc. 1, pp. 7-8). These items include candy bars, chips, ramen noodles, cheddar popcorn, cookies, summer sausages, cocoa, cappuccinos, oatmeal crème pies, peanut butter wafers, tortilla wraps, tuna, and stamps. (Doc. 1, pp. 5-12). In support of this claim, Plaintiff invokes 42 U.S.C. § 1983, 15 U.S.C. § 13(a) ("Clayton Act"), 15 U.S.C. § 1 ("Sherman Antitrust Act"), 15 U.S.C. § 15 ("Robinson-Putnam Act"), and 18 U.S.C. § 1964 ("RICO"). (Doc. 1, pp. 1, 5). Plaintiff also asserts claims under Illinois state law for conspiracy, breach of contract, fraud, unjust enrichment, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §§ 505/1, *et seq*. (Doc. 1, p. 5). He seeks declaratory judgment, monetary damages, and injunctive relief. (Doc. 1, p. 12).

This case is before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff is a pretrial detainee at St. Clair County Jail ("Jail") in Belleville, Illinois. (Doc. 1, p. 5). He has also been incarcerated in several facilities operated by the Illinois Department of Corrections ("IDOC"), including Menard Correctional Center ("Menard"). During his incarceration, Plaintiff has noticed that inmates at different facilities are charged different prices for items at the commissary.

Plaintiff challenges the manner in which vendors enter into contracts with local, state, and federal prisons for commissary items. (Doc. 1, p. 6). He admittedly "knows very little about the particular bidding process." *Id*. Plaintiff nevertheless describes the process in great detail in the Complaint. *Id*.

According to Plaintiff, state and federal facilities solicit bids for contracts from vendors on each facility's website. (Doc. 1, p. 6). Interested vendors propose to sell items to the facility at a predetermined price, and the facility selects the vendor that submits the most attractive bid. *Id*. The facility then obtains commissary items from the vendor at the predetermined price and marks up the prices of these items before selling them to inmates. *Id*.

Vendors obtain contracts with local detention facilities (*e.g.*, county jails or private detention centers) in a different manner. (Doc. 1, p. 6). They allegedly agree to pay a "site commission" or "kickback," usually by "fork[ing] over about 50 to 60% of the profits [the vendor] makes from sales of commissary products to inmates." *Id*. Once the vendor obtains a contract, the vendor sells items directly to inmates, after the vendor "inflates the prices of goods at an extraordinary rate." *Id*. To obtain contracts, these vendors bribe jail administrators with cash, gifts, bonuses, and stock.[1] *Id*. Plaintiff states that these contracts are "indefinite." *Id*. He also asserts that the state and local facilities are exempt from any sales tax. *Id*.

In this manner, Keefe Supply Company has sold hundreds of different products directly and indirectly to inmates. (Doc. 1, p. 6). These products include hygiene supplies, clothing, food, drinks, snacks, and miscellaneous items. *Id*. However, the cost of these products vary between local and state/federal facilities based on the business model used. (Doc. 1, p. 7).

---

[1] Plaintiff adds that these "kickbacks" take the form of "cash, cars, jewelry, trips to Caribbean locations and other vacation spots, etc." (Doc. 1, p. 10). Plaintiff does not indicate where or how he obtained this information.

Inmates at local facilities end up paying more. (Doc. 1, pp. 7-8). Plaintiff offers the following list of items as a point of comparison:

| Product | Average Estimated Cost to Inmate (State and Federal Facilities) | Actual Cost to Detainee (St. Clair County Jail) |
|---|---|---|
| Ramen Noodle Soup Cup | $0.55[2] | $0.85 |
| White Cheddar Popcorn (5 oz.) | $1.75 | $2.85 |
| Snickers bar | $0.70 | $1.90 |
| Hershey bar | $0.70 | $1.90 |
| Keefe Nacho Chips (10 oz.) | $1.75 | --- |
| Cookies (6 oz.) | $0.70 | $1.18 |
| Beef Summer Sausage (5 oz.) | $1.80 | $2.55 |
| Cocoa | $1.75 (8 oz.) | $0.40 (per pack) |
| Cappuccino | $1.75 (8 oz.) | $0.78 (per pack) |
| Keefe Oatmeal Crème Pies | $2.00 (12 count) | $0.60 (per item) |
| Keefe Peanut Butter Wafers | $2.00 (6 count) | $0.80 (per item) |
| Tortilla wraps (6) | $1.00 | $2.50 |
| Tuna Pack (4.25 oz.) | $1.25 | $2.60 |
| Stamps (20) | $4.90 | $6.00 |

Plaintiff argues that detainees should receive these items at a reduced cost for several reasons. First, pretrial detainees are allegedly more stressed than prisoners because they face more uncertainties about their future. (Doc. 1, pp. 7-8). As a result of this stress, detainees have a natural urge to eat more. *Id*. The higher prices on commissary items impede their ability to do so. *Id*. Second, the items offered in the local facilities are lower quality than the same items at state and federal facilities, although Plaintiff does not explain why he believes this is the case. (Doc. 1, p. 8). Third, Plaintiff asserts that the same products are sold to state and federal inmates in bulk for a reduced rate when detainees must pay higher prices for individual items. (Doc. 1, pp. 8-9). Fourth, pretrial detainees are "99%" less likely to file grievances to complain than convicted prisoners. (Doc. 1, p. 8). Fifth, men allegedly "burn off calories more than women" and experience hunger more often. *Id*. Once again, Plaintiff does not explain the connection between this argument and his claims. *Id*. Finally, pretrial detainees are more likely than

---

[2] Although Plaintiff lists the average estimated cost of ramen noodles as $0.55 at state and federal facilities, he also incidates that he "knows for a fact" that ramen noodles "NEVER cost more than $0.35" at these facilities. (Doc. 1, p. 7).

prisoners to rely on their families and friends to pay for their commissary purchases, resulting in an increased burden on third parties, who often "take on a second job" or "work longer hours" to support their detained loved one. (Doc. 1, pp. 8-9). For each of these reasons, Plaintiff believes that detainees are entitled to a price reduction for commissary items. *Id*. Plaintiff goes as far as arguing that detainees at local facilities should be charged less, not more, than prisoners in state and federal facilities. *Id*.

Plaintiff also challenges the sales tax that detainees are routinely charged for their commissary purchases. (Doc. 1, pp. 7-9). Plaintiff has found no law stating that inmates are subject to sales tax. *Id*. Although he offers no information regarding the amount of sales tax detainees are charged, Plaintiff asserts that any tax is unlawful because the funds are not sent to the state. (Doc. 1, p. 9). Instead, the tax dollars are funneled into crime victim compensation funds, police and firefighter pension and retirement funds, and a "commissary tax fund" used to pay personal expenses of jail administrators. *Id*. Plaintiff does not reveal the source of this information. *Id*. He nevertheless claims that Keefe Supply Company (commissary supplier), Austin Everett (trust fund supervisor), and Richard Watson (sheriff) have conspired to defraud inmates by overcharging and taxing them for commissary items, in violation of § 1983, the Clayton Act, the Robinson-Putnam Act, the Sherman Antitrust Act, Racketeering Influenced Corrupt Organizations ("RICO") Act, and Illinois state law. (Doc. 1, pp. 10-12).

### Merits Review Under 28 U.S.C. § 1915A

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court has organized the claims in Plaintiff's *pro se* Complaint into the following enumerated counts:

> **Count 1:** Miscellaneous federal claims against Defendants for conspiring to defraud detainees at the Jail by overcharging them for commissary items, in

5

> violation of 42 U.S.C. § 1983, the Robinson-Putnam Act, the Clayton Act, the RICO Act, and the Sherman Antitrust Act.
>
> **Count 2:** Miscellaneous Illinois state law claims against Defendants for breach of contract, unjust enrichment, fraud, civil conspiracy, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding the merits. **Any claims not identified above but encompassed by the allegations in the Complaint are considered dismissed without prejudice from this action.**

### Discussion

Plaintiff has already brought a lawsuit to address these claims in this District. *See Moore v. Scott, et al.*, No. 17-cv-01153-JPG (S.D. Ill. 2017) ("*Scott*"). The instant Complaint, though more focused, raises the same claims that Plaintiff already set forth in *Scott*. (Doc. 10, pp. 10, 12, 22, 39-40, *Scott*). In *Scott*, Plaintiff named all of the same defendants that are named in this action, with the exception of Keefe Supply Company which he omitted from the list of defendants but nevertheless referred to throughout the Amended Complaint in that case. *Id*. He also requested the same relief in both cases. (Doc. 10, p. 49, *Scott*). *Scott* was dismissed with prejudice on April 18, 2018. (Doc. 17, *Scott*).

Federal courts may dismiss a suit "for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in . . . federal court." *Serlin v. Arthur Anderson & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976)). The decision is discretionary. *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) ("A district court has an ample degree of discretion in deferring to another federal proceeding involving the same parties

and issues to avoid duplicative litigation." (internal citation and quotation marks omitted)). However, a suit is generally considered duplicative when the claims, parties, and relief requested do not vary significantly between the actions. *McReynolds v. Merrill Lynch Co. Inc.*, 694 F.3d 873, 888-89 (7th Cir. 2012). This case is subject to dismissal because it is largely duplicative of *Scott*.

There are other reasons for dismissing this suit. The Complaint supports no claim for relief under federal law. This is largely because Plaintiff fails to develop his claims, opting instead to invoke more than a dozen federal and state law claims without explaining why.

Plaintiff refers to 42 U.S.C. § 1983, but he fails to describe any constitutional deprivation in the Complaint. It is possible that he intended to bring a claim against the defendants for conspiring to violate his Fourteenth Amendment rights. Depriving an inmate of his property might implicate the right to be free from the taking of property, such as money, without due process of law under the Fourteenth Amendment. However, an inmate must allege that his property was taken without due process of law, which Plaintiff does not claim. Further, there is no cognizable constitutional claim, if the state provides an adequate legal remedy. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has held that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). Therefore, Plaintiff cannot proceed with a constitutional claim for a deprivation of his property or money as a result of the commissary prices at the Jail. The Court can discern no other basis for a constitutional claim.

Conspiracy is not an independent basis of liability in §1983 actions. *See Smith v. Gomez*,

550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). "There is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996). This claim also fails.

Plaintiff does not explain why he invokes the other federal statutes listed in his Complaint, including the Sherman Act, Clayton Act, Robinson-Putnam Act, and RICO Act. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To satisfy this standard, Plaintiff is not required to plead "detailed factual allegations," but he must set forth more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*. Likewise, a complaint containing "naked assertion[s]" that are "devoid of 'further factual enhancement'" is insufficient to state a claim. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. Plaintiff presents such claims in the Complaint when he refers to the Clayton Act, Sherman Act, Robinson-Putnam Act, and RICO Act without further explanation. These claims are subject to dismissal for failure to state a claim.

The only remaining claims in the Complaint arise under Illinois state law. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008)

(citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). With that said, "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial. Indeed, this presumption counsels that the better practice is for district courts to state explicitly their reasons for taking the opposite course." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Absent a viable federal claim, the Court declines to exercise supplement jurisdiction over the state law claims. 28 U.S.C. § 1367.

## Disposition

**IT IS HEREBY ORDERED** that the **COMPLAINT** (Doc. 1) is **DISMISSED** without prejudice as being duplicative of *Scott* and/or for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that Defendants **KEEFE SUPPLY COMPANY, RICHARD WATSON, AUSTIN EVERETT,** and **ST. CLAIR COUNTY, ILLINOIS,** are dismissed without prejudice from this action.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff must file his First Amended Complaint on or before **June 5, 2018**. Should Plaintiff fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. APP. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

Should Plaintiff decide to file a First Amended Complaint, it is strongly recommended

that he use the forms designed for use in this District for such actions. He should label the form, "First Amended Complaint," and he should use the case number for *this* action (*i.e.,* 17-cv-1386-JPG). The pleading shall specify, *by name*, each defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that defendant. Plaintiff should attempt to include the facts of his case in chronological order, inserting each defendant's name where necessary to identify the actors. Plaintiff should refrain from filing unnecessary exhibits. Plaintiff should *include only related claims* in his amended complaint. Claims that are unrelated to one another or involve different groups of defendants will be severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to a complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A. No service shall be ordered on any defendant until after the Court completes its § 1915A review of the First Amended Complaint.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

**IT IS SO ORDERED.**

**DATED: May 8, 2018**

s/J. Phil Gilbert
**District Judge**
**United States District Court**
